1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  1:14-cr-00141-JLT |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 28 U.S.C. § 3582(c)(1)(A) |
| v. | |
| TOUCH PEANG, | (Docs. 133, 171) |
| Defendant. | |

18      Defendant Touch Peang is a federal prisoner moving for compassionate release under 28

19  U.S.C. § 3582(c)(1)(A).  (Docs. 133, 171.)  The Government opposes this motion, (Doc. 178),

20  and Pang has filed a reply.  (Doc. 183.)  For the reasons explained below, the motion is

21  **DENIED**.

22                              **BACKGROUND**

23      On August 3, 2015, Peang pled guilty to one count of conspiracy to distribute

24  methamphetamine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846.  (Docs. 69, 75.)

25  The Presentence Report found the offense level applicable to Peang's conduct was 35 and his

26  criminal history category as (I). It found the applicable guideline range was 168 to 210 months

27  imprisonment.  (Doc. 91 at 4.)  In his plea agreement, Peang agreed not to argue for a sentence

28  of fewer than 130 months imprisonment.  (Doc. 69 at 2.)  Peang was sentenced on October 19,

1   2015 to a below-guidelines term of 144 months imprisonment, followed by a 60-month term of

2   supervised release.  (Docs. 98, 99.)  Peang has been incarcerated for approximately 84 months

3   and is currently serving his sentence at FCI Loretto. His projected release date is April 2026.

4   *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited

5   December 16, 2022.)  Peang asks the Court to grant him compassionate release because he

6   suffers from medical conditions—namely, asthma—which may cause complications if he

7   contracts COVID-19.  The government opposes the motion on the grounds that Peang has been

8   fully vaccinated against COVID-19 and his asthma is being properly managed at FCI Loretto.

9   **LEGAL STANDARD**

10   A court generally "may not modify a term of imprisonment once it has been imposed."

11   18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

12   of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

13   not be modified by a district court except in limited circumstances.").  Those limited

14   circumstances include compassionate release in extraordinary cases.  *See United States v.*

15   *Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Under the First Step Act of 2018 ("the FSA"),

16   imprisoned defendants may bring their own motions for compassionate release in the district

17   court.  18 U.S.C. § 3582(c)(1)(A) (2018).  A defendant bears the burden of "establish[ing] his

18   eligibility for compassionate release."  *United States v. Wright*, 46 F.4th 938, 951 (9th Cir.

19   2022).

20   First, defendants petitioning for compassionate release must exhaust administrative

21   remedies.  Once they do so, courts consider whether "extraordinary and compelling reasons

22   warrant" the requested reduction.  18 U.S.C. § 3582(c)(1)(A) (2018).  Then, the court must

23   consider the sentencing factors enumerated in 18 U.S.C. § 3553(a).  *Id.*

24   Section 3582 requires a reduction to be "consistent with applicable policy statements

25   issued by the Sentencing Commission."  *Id*. In 2006, the Sentencing Commission issued a policy

26   statement addressing what qualifies as "extraordinary and compelling reasons" to release a

27   defendant from BOP custody.  *See* U.S.S.G. § 1B1.13 (last amended Nov. 1, 2018).  This Court

28   refers to the Sentencing Commission's policy statement for guidance.  *See United States v.*

2

1   *Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) ("The Sentencing Commission's

2   statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A)

3   motions filed by a defendant, but they are not binding.").  The relevant policy statement outlines

4   four categories of circumstances that may constitute "extraordinary and compelling reasons" for

5   a sentence reduction:

6           (1) the defendant suffers from a medical condition that is terminal
7           or substantially diminishes the defendant's ability to provide self-
            care in a correctional environment;

8           (2) the defendant is at least 65 years old, is experiencing a serious
9           deterioration in health due to the aging process, and has served at
            least 10 years or 75% of his or her term of imprisonment;
10

11          (3) family circumstances involving the death or incapacitation of
            the caregiver of the defendant's minor child or the incapacitation of
12          the defendant's spouse or registered partner; or

13          (4) other reasons, other than or in combination with the other listed
            circumstances, that are extraordinary and compelling.
14

15  *United States v. Allen*, No. 17-0229, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019) (citing

16  U.S.S.G. § 1B1.13 cmt. 1).

17                                  **ANALYSIS**

18  **A.      Administrative Exhaustion**

19          The parties agree that Peang has properly exhausted his request for compassionate

20  release by submitting a request to the Warden, which was denied.  (*See* Doc. 178 at 3.)  Thus, the

21  remaining questions before the Court are: 1) whether Peang's request is supported by

22  "extraordinary and compelling" reasons, and if so, whether 2) the relevant § 3553(a) sentencing

23  factors weigh in favor of a reduction in sentence.

24  **B.      Extraordinary and Compelling Reasons**

25          Many federal district courts, including this one, have found that defendants can

26  demonstrate "extraordinary and compelling reasons" for compassionate release under

27  § 3582(c)(1)(A)(i) if they show that (1) their health conditions put them at increased risk of

28  severe COVID-19 symptoms and (2) they are at risk of infection because their facility is

currently suffering from a COVID-19 outbreak or is at risk of an outbreak.  *See, e.g., United States v. Terraciano*, 492 F.Supp.3d 1082, 1085–86 (E.D. Cal. 2020).  Recent or ongoing rises in the reported number of infections might make for a stronger showing of "extraordinary and compelling reasons," but spikes and outbreaks have not always been necessary to support motions under § 3582(c)(1)(A). *See id*. at 1086.

Peang argues that he is afflicted by "moderate to severe" asthma, (Doc. 171 at 1–2), which the CDC notes "can" make one "more likely to get very sick from COVID-19".  *See* Ctrs. for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19), People With Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019- ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited December 15, 2022).  As an initial matter, the medical records cited by Peang do not describe his asthma as moderate-to-severe.  (Doc. 175 at 120–21.)  The medical records indicate only that Peang has asthma and uses an inhaler—not daily, but as needed to prevent asthma attacks.  (Doc. 175 at 120.)  The records also indicate that Peang's asthma is "well controlled" by the medications provided in his facility.  (Doc. 182 at 13.)[1]  This does not meet Peang's burden to show that his health conditions put him at an increased risk of severe COVID-19 symptoms, particularly because he reports that he has already been infected without complications.  (Doc. 133 at 9–10.)

Furthermore, Peang has been fully vaccinated against COVID-19 and received one booster.  (Doc. 182 at 48.)  When a defendant is vaccinated, this Court and others have employed a rebuttable presumption that the risk of severe harm from COVID-19 is not an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i).  *See United States v. Smith*, 538 F. Supp. 3d 990, 999 (E.D. Cal. May 11, 2021).  A defendant can rebut this presumption by offering evidence of an elevated personal risk of severe harm despite the protections of vaccination.  *Id*.

Peang argues that he is not sufficiently protected by his vaccines because he is overdue

---

[1] Peang briefly notes that a recent echocardiogram found a potential abnormality in his heart, (Doc. 171 at 4), but he does not point to or provide any evidence that it heightens his risk for COVID-19 complications.

1    for his second COVID-19 booster, and his previous vaccines may not protect him against new

2    and developing COVID-19 variants.  (Doc. 183 at 2–3.)  The CDC acknowledges that

3    vaccination's level of protection may vary as variants continue to emerge, but nonetheless

4    confirms that vaccinations "are safe and effective at protecting people from getting seriously ill,

5    being hospitalized, and dying."  Ctrs. For Disease Control & Prevention, "COVID-19; Benefits

6    of Getting a COVID-19 Vaccine," https://www.cdc.gov/coronavirus/2019-

7    ncov/vaccines/vaccine-benefits.html (last visited December 16, 2022).  Though Peang raises the

8    concern that FCI Loretto is "a facility *at risk* of an outbreak" due to inmates living in close

9    quarters, (Doc. 183 at 4) (emphasis added), Peang has not shown evidence that any variant has

10   *actually* taken hold in the facility where he is housed such that an outbreak is likely.[2]  These

11   facts, combined with the lack of evidence confirming that Peang's asthma is truly worrisome,

12   preclude a finding that Peang's health conditions and risk of infection are extraordinary and

13   compelling circumstances warranting relief.  *See United States v. McCarns*, No. 2:08-CR-00116-

14   KJM-5, 2022 WL 16551701 at *4 (E.D. Cal. Oct. 31, 2022).

15   **C.      Consistency with the § 3553(a) Factors**

16           Because the Court concludes that Peang's request is not supported by "extraordinary and

17   compelling" reasons, the Court need not reach the § 3553(a) sentencing factors.  *See United*

18   *States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) ("[A]lthough a district court must perform

19   this sequential inquiry before it grants compassionate release, a district court that properly denies

20   compassionate release need not evaluate each step.").

21   ///

22   ///

23   ────────────────────

24   [2] The statistics that Peang provides regarding COVID-19 rates "in prisons" compared to "the general population"
     are too general to be relevant for the Court's risk assessment. (Doc. 133 at 10–11.)  The Court also takes judicial
     notice that as of December 16, 2022, the BOP has reported the following data on COVID-19 cases at FCI Loretto: 1

25   confirmed positive test result, 1 inmate death and 662 inmates recovered. Federal Bureau of Prisons, COVID-19
     Cases, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited Dec. 16, 2022). FCI Loretto is also operating

26   at a Level 1 BOP COVID-19 Operational Level, *id.*, meaning the medical isolation rate at the facility is less than 2
     percent and the community transmission rate is less than "100 per 100,000 over the last 7 days." Federal Bureau of
     Prisons, COVID-19 Modified Operations Plan & Matrix, BOP,

27   https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Dec. 16, 2022). This
     information does not change—and in fact supports—the Court's conclusion as articulated in this order.

28

1

**CONCLUSION**

2          Accordingly,

3          1.   Defendant Peang's motion for compassionate release pursuant to 18 U.S.C. §

4               3582(c)(1)(A), (Doc. 133), is **DENIED**.

5

6     IT IS SO ORDERED.

7          Dated:   __**December 19, 2022**__          _____

8                                                      UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6